UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HERBERT L. LAWRENCE,<br><br>    Petitioner,<br><br>  v.<br><br>JAMES ROBERTSON, Warden,<br><br>    Respondent. | Case No. 2:19-cv-08213-SP<br><br>**MEMORANDUM OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## I.

## **INTRODUCTION**

  On September 23, 2019, petitioner Herbert L. Lawrence filed a Petition for Writ of Habeas Corpus by a Person in State Custody ("Petition"). Petitioner challenges his 2017 convictions in Los Angeles County Superior Court for assault with a semi-automatic firearm, possession of a firearm by a felon, and attempted voluntary manslaughter.

  Petitioner raises one ground for relief, that the trial court erred and violated his constitutional rights when it excluded evidence of the victim's violent history, which petitioner contends shows he acted in self-defense. For the reasons discussed below, petitioner's claim does not merit federal habeas relief.

## II.
## **STATEMENT OF FACTS**[1]

At 10:00 p.m. on New Year's Eve John Buckner and his girlfriend, Ellie Richards, stopped at a gas station to buy some cigarettes. Petitioner, with a "stale" expression on his face and "looking crazy," walked slowly in front of Buckner's car. Buckner, who was already angry and frustrated because he had been arguing with Richards, honked the horn and got out of the car. Buckner approached petitioner and yelled, "What the fuck you doing?" and "You know where you at?" and "Who are you? What are you doing?" Buckner was "on it" because, even though he knew everyone in the neighborhood, he did not recognize petitioner, and because petitioner had a "like-he-didn't-care" look on his face. As Buckner, who wore his pants low and sagging, approached petitioner and pulled up his pants by his belt or waistband. Petitioner turned and backed away from Buckner, and Buckner followed him.

Petitioner then pulled out a gun and shot Buckner as Buckner brought his arms toward his chest, "balling up," to protect himself. Buckner ran to the side of the gas station store, and petitioner fired several more shots. Buckner eventually made it back to his car, and Richards drove him to the hospital, where he was treated for three gunshot wounds. Neither Buckner nor Richards had a gun that evening.

There was conflicting evidence whether Buckner was a member of the Bounty Hunters criminal street gang. Buckner testified that he grew up around gangs, but that he was not a member of the Bounty Hunters or any other gang, although he associated with people who were members of the Bounty Hunters.

---

[1] This statement of facts is drawn substantially verbatim from the California Court of Appeal's decision on direct appeal. *See* Lodged Document ("LD") 6. Such statement of facts is presumed correct. 28 U.S.C. § 2254(e)(1); *Vasquez v. Kirkland*, 572 F.3d 1029, 1031 n.1 (9th Cir. 2009).

Buckner had numerous tattoos, but explained they were his mother's name, his nickname "JB" (his initials), Freddy Krueger, Felix the Cat, money bags, and a "collage of money and flames."  Petitioner introduced photographs of Richards making a gang sign used by the Bounty Hunters and other "blood gangs" and of Buckner making a similar sign.

Petitioner experienced his encounter with Buckner differently.  Petitioner stated that, after paying the gas station attendant, he walked back to his car to pump the gas.  Buckner drove up in a black car, almost hit him, honked the car's horn, and told petitioner to get out of the way.  Buckner angrily and aggressively asked petitioner why he was walking so slowly and what he was doing there.  Petitioner, annoyed Buckner had honked at him, said loudly, "I'm just minding my business."  Buckner said, "Who you getting loud with? Don't you know you'll get smoked over here?"  These words made petitioner think Buckner was a member of the Bounty Hunters.  Buckner said, "Get up out of here before you get smoked."

Petitioner backed up and turned around.  Buckner reached for his pants, which to petitioner meant Buckner had a weapon.  Petitioner kept walking away and looked over his shoulder at Buckner.  When petitioner saw Buckner reach for something shiny, he thought Buckner was going to take out a gun and shoot him.  Fearing for his life, petitioner took out his gun and shot Buckner.

Petitioner admitted he was a member of the Inglewood Family Bloods criminal street gang with the moniker "Rampage" (because, according to petitioner, he used to fight a lot when he was younger), but stated he did not commit crimes for the gang.  Petitioner had 15 tattoos showing his allegiance to the Inglewood Family Bloods, including "IFGB," which stood for "Inglewood Families Gangster Bloods."  In a recorded jail call, petitioner said, "I'm killa from Inglewood Families," although petitioner stated "killa" meant "cool."

Sheriff's deputies later recovered four expended shell casings from the

scene. They also obtained from the gas station a surveillance video recording of the incident showing the confrontation between petitioner and Buckner and petitioner firing five shots at Buckner, several of which were after Buckner had run away from petitioner and towards the gas station store. Later, in a search of a bedroom petitioner occasionally used, sheriff's deputies found a .40 caliber semiautomatic pistol loaded with a magazine clip containing live ammunition and two additional magazines.

### III.
### PROCEEDINGS

On August 25, 2017, a jury convicted petitioner of assault with a semiautomatic firearm (Cal. Penal Code § 245(b)), possession of a firearm by a felon (Cal. Penal Code § 29800(a)(1)), and attempted voluntary manslaughter (Cal. Penal Code §§ 192(a), 664(a)). LD 1 (Clerk's Transcript ("CT")) at 174-75, 178. The jury found true the personal use of a firearm (Cal. Penal Code § 12022.5(a)) and great bodily injury (Cal. Penal Code § 12022.7(a)) enhancement allegations. *Id.* Petitioner admitted that he had served three prior prison terms (Cal. Penal Code § 667.5(b)) and had suffered one prior serious or violent felony conviction within the meaning of California's Three Strikes Law (Cal. Penal Code §§ 667(b)-(I), 1170.12(a)-(d)). CT at 206; LD 2 (Reporter's Transcript ("RT")) at 1503. The trial court sentenced petitioner to a total state prison term of 35 years and four months. CT at 206-08; RT at 1508.

Petitioner, represented by counsel, appealed his conviction on the grounds that the trial court abused its discretion and violated petitioner's federal constitutional rights when it excluded evidence that showed petitioner acted in self-defense, and that the case should be remanded under Senate Bill 620. LD 4. On April 10, 2019, the California Court of Appeal affirmed the judgment. LD 6.

Petitioner filed a petition for review in the California Supreme Court, raising

the same claims, which was summarily denied on July 10, 2019. LD 8-9.

## IV.
## STANDARD OF REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA federal habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2) (emphasis added).

In assessing whether a state court "unreasonably applied" Supreme Court law or "unreasonably determined" the facts, the federal court generally looks to the last reasoned state court decision as the basis for the state court's justification. *Wilson v. Sellers*, __ U.S. __, 138 S. Ct. 1188, 1192, 200 L. Ed. 2d 530 (2018) ("the federal court should 'look through' the unexplained decision to the last related state-court decision" and "presume that the unexplained decision adopted the same reasoning"). Here, the California Court of Appeal's April 10, 2019 opinion stands as the last reasoned decision on petitioner's claim.

## V.
## DISCUSSION

Petitioner contends the trial court abused its discretion and violated petitioner's constitutional rights when it excluded evidence that showed petitioner acted in self-defense. Petition at 5. Specifically, petitioner claims his constitutional rights were violated when the trial court excluded evidence of

Buckner's prior incidents of violence, and when petitioner's trial attorney was precluded from questioning Buckner regarding his prior violent history. *Id*. at 8-9.

A. **Relevant Trial Court Proceedings**

Prior to trial, and in support of his self-defense theory, petitioner moved under California Evidence Code § 1103 to admit evidence of prior incidents of violence by Buckner, including evidence of a fight in 2008 for which Buckner was arrested and charged with murder, but which the jury acquitted him of based on self-defense. RT at 11-12. Counsel for petitioner argued the incident, which involved Buckner using a gun, was relevant to show Buckner, in his altercation with petitioner at the gas station, acted in conformity with a trait for violence and made it "more likely [Buckner] would have reached for a gun on this occasion." *Id*. at 12. Counsel for petitioner argued the evidence was admissible under § 1103 because it showed "the proclivity for violence on the part of the victim." *Id*. at 16.

The court denied petitioner's request to introduce evidence of the 2008 incident under California Evidence Code section 352, stating: "I don't think it's particularly relevant for this particular trial, especially based on the facts that have been presented with regard to that prior incident." *Id*. at 16-17. When counsel for petitioner asked whether the court was excluding evidence Buckner was acquitted of the charges relating to the 2008 incident and whether counsel could "still ask about a pattern of violent behavior [Buckner] may have engaged in," the court stated, "No, you cannot." *Id*. at 17-18. When counsel for petitioner argued he wanted to ask Buckner about incidents of violence other than the 2008 fight, the court stated, "Oh, you're not going fishing. We're not going fishing." *Id*. at 19.

> The Court: Okay. So my question is . . . what character trait and what exact conduct are you going to be asking about?
>
> [Counsel for petitioner]: I have a good faith basis for, believing that the victim—

The Court: No. No. . . . When I ask a question, I need you to answer it directly.

[Counsel for petitioner]: Yes, Your Honor.

The Court: What exact conduct – not fishing, not asking him a question and see what comes up, because that's not going to happen. What character trait and what specific conduct are you seeking in, other than the [2008] murder?

[Counsel for petitioner]: Violence and violent acts carried out in furtherance of gang activity.

The Court: What good faith belief do you have that this person has been involved in violence, outside of this one murder case that we're talking about?

[Counsel for petitioner]: That the victim has stated that he was in a gang.

\* \* \*

The Court: . . . Are you saying all gang members are involved in violence?

[Counsel for petitioner]: I'm saying there's a higher likelihood that someone who is a gang member and who is referencing the gang member in a confrontational manner, at night, is more likely to have violent instances in his past. That's why I'm not asking to say that, but rather to simply ask the witness that.

The Court: Okay. I'm going to go ahead and sustain counsel's objection with regard to relevance. And also I don't think you have a good faith belief to ask that question. And if you're pitching that everybody that says they're in a gang or associates with a gang, that always is involved in violent conduct, that's not my experience.

1   RT at 21-23.
2        The issue arose again during a break in jury selection when the prosecutor,
3   acknowledging the court had precluded counsel for petitioner from asking Buckner
4   about his propensity for violence, requested permission to ask Buckner if he was a
5   gang member, which the prosecutor believed Buckner would answer, "No." RT at
6   391-92. The court told the prosecutor, "You can do what you want," and asked
7   counsel for petitioner if he had any objection. *Id*. at 392. Counsel for petitioner
8   inquired whether the court would allow him to follow up by asking Buckner
9   whether he was affiliated with a gang or associated with gang members, and the
10  court said, "Sure." *Id*. Counsel for petitioner also inquired if he could follow up
11  by asking Buckner, "Have you committed violent acts in the past," to which
12  Buckner could answer "yes" or "no." *Id*. at 393.
13          The Court: No. No. We're not – we already rehashed that. You
14      can't just go on a fishing expedition and say, "Hey, have you done
15      anything violent in the past?" . . . You can't just go in and just say,
16      "Hey, you done anything violent in the past?" without a good faith
17      belief, outside of the [2008] murder that we've already discussed, that
18      he has committed.
19          [Counsel for petitioner]: I would just maintain what I
20      hadmaintained earlier, which is that my good faith belief is that –
21          The Court: Okay. Did you just say that you did it earlier? So,
22      therefore, you're repeating yourself, right?
23          [Counsel for petitioner]: Yes, Your Honor.
24          The Court: So I don't need to hear it again, unless something
25      else comes up.
26          [Counsel for petitioner]: Can I just put on the record what the
27      basis is here for my objection to the ruling, for appellate purposes?
28

| | |
|---|---|
| 1 | The Court: You already did. |
| 2 | [Counsel for Petitioner]: For this issue. |
| 3 | The Court: So you want to repeat it? |
| 4 | [Counsel for Petitioner]: On the gang issue. |
| 5 | The Court: Go ahead. Go ahead and repeat yourself again. |
| 6 | [Counsel for Petitioner]: The basis is that he – I have a good |
| 7 | faith basis for believing that he is in a gang, and I would want to be |
| 8 | able to ask about whether he's committed any violent acts for the |
| 9 | gang. |
| 10 | The Court: What good faith basis do you have that he has |
| 11 | committed violent acts? |
| 12 | [Counsel for Petitioner]: Gang membership. |

RT at 393-94.

Petitioner's counsel also argued that Buckner's participation in the 2008 fight, along with his use of a gun in that incident, provided an additional good faith basis for asking Buckner about specific instances of violent conduct, even though the court had ruled Buckner's use of a gun was inadmissible. *Id*. at 395-97. Counsel for petitioner also argued that the fact Buckner had multiple bullet wounds, even if not admissible, provided a further good faith basis for asking Buckner about past instances of violent conduct. *Id*. at 397-99. Counsel argued: "The burden for just asking the question is a good faith belief," not having "to prove by a preponderance of the evidence that it is true." *Id*. at 398-99. The court again sustained the prosecutor's objection. *Id*. at 399.

**B.** **Petitioner Is Not Entitled to Habeas Relief on His Claim**

Petitioner argues the trial court abused its discretion and violated his federal constitutional rights when it excluded evidence of Buckner's violent character, proffered to support petitioner's claim that he acted in self-defense. Petition at 8-9.

Petitioner contends the ruling deprived him of his right to present a defense. *Id.*

The California Court of Appeal agreed with petitioner that the trial court erred under California law in excluding evidence of Buckner's prior violent conduct, but found such error was harmless. LD 6 at 10-16. The appellate court found that "sustaining the prosecutor's objection to questions about Buckner's past instances of violent conduct on the grounds that the questions were not relevant and that counsel for petitioner did not have a good faith basis for asking the questions" was an abuse of the trial court's discretion. *Id.* at 11. Nevertheless, the Court of Appeal concluded such error "was harmless because, even if the court had allowed counsel for [petitioner] to question Buckner on that topic, there is no reasonable probability the verdict would have been any different." *Id.* at 14. In so concluding, the Court of Appeal found it significant that petitioner was able to present substantial other evidence that he acted in self-defense. *Id*. at 14. The Court of Appeal also noted the videotape of the incident showed the jury petitioner continued to shoot Buckner after any danger that would justify self-defense had passed. *Id.* at 15.

To the extent petitioner claims here that the trial court abused its discretion under state law in excluding the evidence at issue, his claim is not cognizable. Federal habeas relief is not available for alleged errors in the interpretation or application of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991). The court is limited to deciding whether petitioner has been convicted or sentenced in violation of the Constitution, laws, or treaties of the United States. *Swarthout v. Cooke*, 562 U.S. 216, 219, 131 S. Ct. 859, 861, 178 L. Ed. 2d 732 (2011); *Estelle*, 502 U.S. at 67-68. Allegations that the trial court abused its discretion under state law do not involve any alleged deprivation of a federally protected right. *See Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) (explaining that a federal habeas petitioner may not "transform a state-law

issue into a federal one merely by asserting a violation of due process").

To the extent petitioner alleges the trial court's ruling deprived him of his right to present a defense, his claim also fails. Whether rooted in the Due Process Clause or in the Sixth Amendment, "the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006). (quoting *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986)). But the Due Process Clause does not guarantee the right to introduce all relevant evidence. *Montana v. Egelhoff*, 518 U.S. 37, 41-42, 116 S. Ct. 2013, 135 L. Ed. 2d 361 (1996). A defendant's right to introduce relevant evidence is subject to reasonable restrictions, such as evidentiary and procedural rules. *See U.S. v. Scheffer*, 523 U.S. 303, 308, 118 S. Ct. 1261, 140 L. Ed. 2d 413 (1998). "Thus, a trial judge may exclude or limit evidence to prevent excessive consumption of time, undue prejudice, confusion of the issues, or misleading the jury. The trial judge enjoys broad latitude in this regard, so long as the rulings are not arbitrary or disproportionate." *Menendez v. Terhune*, 422 F.3d 1012, 1033 (9th Cir. 2005) (citations omitted); *see Egelhoff*, 518 U.S. at 42 (accused does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under evidentiary rules).

When a petitioner challenges the exclusion of particular evidence, the trial court's decision must be so fundamentally unfair as to violate due process before federal habeas relief is warranted. *See Spivey v. Rocha*, 194 F.3d 971, 977-78 (9th Cir. 1999); *Moses v. Payne*, 555 F.3d 742, 756 (9th Cir. 2009) (the exclusion of evidence "is unconstitutional only where it 'significantly undermined fundamental elements of the defendant's defense'"). Exclusion of testimony is of constitutional magnitude and violates the right to present a defense only when the excluded testimony is critical to the defendant's ability to defend against the charge.

*DePetris v. Kuykendall*, 239 F.3d 1057, 1062 (9th Cir. 2001). Even if the exclusion of evidence constitutes a constitutional error, it is subject to harmless error analysis. *See Neder v. U.S.*, 527 U.S. 1, 18, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999).

As to the federal question petitioner raises in the instant Petition, the California Court of Appeal rejected petitioner's claim that the trial court's ruling violated his federal due process rights because it prevented him from presenting evidence that would have established he acted in self-defense. LD 6 at 16-17. The Court of Appeal explained that petitioner did present evidence that he acted in self-defense, and "the trial court excluded very little of what [he] wanted to present on that issue." *Id*. at 16. The court found there was no due process violation because the trial court's ruling allowed petitioner "'to present the evidence that was most probative of Buckner's alleged violent demeanor during the shooting, while . . . excluding questioning that was minimally relevant.'" *Id*. In other words, the Court of Appeal concluded the jury was not deprived of hearing evidence crucial to establishing whether petitioner acted in self-defense. *See DePetris*, 239 F.3d at 1065 (finding the trial court's exclusion of evidence critical to petitioner's ability to defend against the charge violated petitioner's right to due process law – the right to present a valid defense).

The record shows the jury watched the surveillance videotape that captured the entire incident. RT at 612. Petitioner's counsel cross-examined Buckner about the incident while also displaying frame-by-frame pictures of the video recording. *Id*. at 643-50. Counsel also questioned Buckner about his demeanor when he exited his car, his alleged gang affiliation, his relationships with gang members, and his tattoos. *Id*. at 632-34, 636-37. Additionally, the trial court admitted a photograph of Buckner's girlfriend Richards making a gang sign and a photograph of Buckner making a similar sign. *Id*. at 639-43. Petitioner also testified that

Buckner's aggressive behavior caused petitioner to fear for his life and that he thought Buckner was reaching for a gun in his waistband. *Id*. at 928-34, 983, 1027-28. Petitioner's opening statement focused on his self-defense theory, and both the prosecution and defense focused on self-defense during closing arguments. *See, e.g., id.* at 475, 479, 1248, 1282. The trial court also instructed the jury on self-defense. *Id*. at 1228-30, 1240-44. Given this record, the Court of Appeal's rejection of petitioner's claim based on its determination that the trial court had in fact permitted petitioner to present the most probative evidence in support of his claim of self-defense was neither contrary to clearly established federal law nor an unreasonable determination of the facts.

      The Court of Appeal also reasonably concluded that the trial court's error in excluding trial counsel's questions regarding Buckner's prior violent conduct did not have a substantial and injurious effect or influence in determining the jury's verdict. *See DePetris*, 239 F.3d at 1063-65 (9th Cir. 2001) (finding exclusion of evidence bearing on petitioner's imperfect self-defense theory violated her federal constitutional right to present a defense, but analyzing the error for harmlessness under *Brecht v. Abrahamson*, 507 U.S. 619, 637-38, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993)). The videotape showed the jury that petitioner "continued to shoot Buckner after Buckner ran to the side of the gas station store to protect himself and after any danger possibly justifying self-defense had passed." LD 6 at 15. Petitioner's own testimony undermined his claim of self-defense, namely that Buckner was running away from him by the time he fired the second and third shots and petitioner could have got into his car and driven away by the time he fired the fourth shot. RT at 934, 936, 980-83. As the Court of Appeal observed, "this was not a case where the evidence before the jury was two conflicting versions of the same violent incident . . . where evidence of victim's reputation for or history of violence may have made a difference" in the outcome of the trial. LD

6 at 15.

For the foregoing reasons, petitioner is not entitled to federal habeas relief on his claim in the Petition.

## VI.
## ORDER

IT IS THEREFORE ORDERED that Judgment be entered denying the Petition and dismissing this action with prejudice.

DATED: March 29, 2023

_____
SHERI PYM
UNITED STATES MAGISTRATE JUDGE